Cummings, Treasurer, et al. v. Stark et al.

No. 16,957.

CUMMINGS, TREASURER, ET AL. v. STARK ET AL.

TAXES.—*State Board of Tax Commissioners.—Original Jurisdiction.—Extent of Authority to Order Addition.*—The State Board of Tax Commissioners has no original jurisdiction to revise individual tax lists other than railroad property and the equalization of assessments of real estate; and not having the power themselves, they can not order an addition to be made by the county auditor.

SAME. — *Addition to Assessment by County Auditor. — Notice.* — The county auditor has no power to add to an assessment without giving the property owner written notice of his intention so to do.

CONSTITUTIONAL LAW.—*When Constitutional Question will not be Passed Upon.—Practice.*—A constitutional question will not be passed upon unless necessary to a determination of the merits of the case.

PARTIES.—*Taxes.—Action to Enjoin.—County Commissioners.*—In an action to enjoin the collection of taxes, the county commissioners are proper parties along with the county treasurer.

From the Parke Circuit Court.

*A. G. Smith*, Attorney-General, *D. H. Maxwell* and *H. Maxwell*, for appellants.

*E. Hunt* and *A. M. Hadley*, for appellees.

McCABE, J.—Appellees brought suit against appellants to enjoin the collection of certain taxes.

The court overruled a separate demurrer of each of the appellants to the complaint, for want of sufficient facts, and appellants refusing to plead further, and electing to stand on their demurrer, judgment was rendered upon said demurrer enjoining the tax.

The errors assigned, separately and jointly, are that the court erred in overruling each of said demurrers.

The complaint, after the title, is as follows:

"That plaintiffs are a firm, and have an office, as such, doing a banking business, with a view to profit, at Rockville, in Adams township, in Parke county, State of Indiana, in the name and style of the 'Parke Bank,'

Cummings, Treasurer, *et al. v.* Stark *et al.*

and that they were so engaged at said place and in said name on the 1st day of April, 1891, and that they were then, and still are, residents of said county and township; that defendant Norval W. Cummings is the duly qualified and acting treasurer of said county; that on said 1st day of April, 1891, plaintiffs, as such firm, and in said firm name of 'Parke Bank,' were the owners of property of the kind and value, namely:

"United States Treasury notes.....$11,446 00
"United States bond.............    600 00
"Other moneys..................  2,242 00
"Deposits in other banks......... 56,651 00
"Notes and bills receivable........ 51,842 00
"Stock in Rockville B., L. F. and
   S. A......................  1,134 65
"Stock in Edgar Co. Nat'l Bank...  4,000 00
"Stock in Rockville Opera House
   Co......................    750 00
"Office furniture and fixtures......  1,000 00
"Real estate in Parke county......  6,090 00

"And that such firm, in said name, owned no other property; that on said 1st day of April, 1891, they, as such firm, were indebted to their depositors, for deposits in their said bank, in the sum of $119,465; that on the 1st day of April, 1891, they, as such firm, made out and furnished to the assessor of said township a verified list and statement of all of the above personal property liable for taxation in said county, and also a statement of said indebtedness; that in said statement and list of property returned for taxation, they returned their said deposits in other banks, the said sum of.... $56,651.00
As credits with their other credits.........  51,842.00

The total amounting to .....:............$108,493.00

And offset the same by their said indebtness of $119,-465 to their depositors, leaving nothing in the way of credits for taxation; that such list and statement was accepted by said assessor without making any change therein, and was returned by him to the auditor of said county, when the same was passed on by the county assessor and the county board of review of said county without adding to or taking anything therefrom, and finally approved by them as listed by plaintiffs, and no change was ever made therein other than as hereinafter stated; that afterwards the State Board of Tax Commissioners, upon notice to plaintiffs, and over their objections, added $55,651 of said deposits in other banks, to wit, of the $56,651 which plaintiffs had returned as credits, to their assessment, and thereupon notified the auditor of said county to add said sum to their list, and place the same, to wit, said $55,651, upon the tax duplicate against plaintiffs' firm in their said name, which he did without other notice, in their absence, and without their knowledge or consent, and extended the same on the tax duplicate of said county for said year of 1891, and thereupon assessed and carried forward against plaintiffs and their property on said duplicate the sum of $1,046.24 as taxes on said sum of $55,651, and afterwards made out and transmitted to the treasurer of said county a duplicate of said assessments, with said taxes assessed, and that such duplicate is now in the hands of said treasurer for the purpose of collecting the taxes assessed thereon for said county; that plaintiffs have paid to said treasurer all the taxes due upon all the property owned by them, of every description whatever, except the taxes added upon the $55,651 of said deposits of $56,651 aforesaid, and that said treasurer is threatening to and will collect said taxes by distress and sale of plaintiffs' property unless he is enjoined from so doing, and plaintiffs further aver that

said taxes are a cloud upon the title to their property, and should be removed, and said treasurer perpetually enjoined from collecting or attempting to collect the same, for the reasons, namely:

"*First.* The said assessment made pursuant to the order of said board of tax commissioners was without authority of law.

"*Second.* The said assessment against plaintiffs, by said auditor, was without any lawful notice or authority of law.

"*Third.* That on the 1st day of April, 1891, said deposits of $56,651 were not moneys belonging to them, but were credits to their bank, on the books of other banks where such deposits had been made in their usual course of business as bankers, and for banking purposes; and that no part thereof was on special deposits, and that all of their said deposits with said banks, amounting to $56,651, and all their other credits of $51,842, did not equal their indebtedness of $119,465 aforesaid. Wherefore plaintiffs pray judgment that the adding of said sum of $55,651 to plaintiffs' taxables, and assessing $1,046.24 taxes thereon, was without authority of law; that the said deposits were credits from which debts should be deducted, and that the said $55,651 was not liable to taxation, and that the defendants and their successors in office be forever and perpetually enjoined from collecting or attempting to collect said taxes assessed on said $55,651, and for all other and proper orders, judgments, and decrees in the matter."

The first question presented is whether the order of the State Board of Tax Commissioners complained of was valid. The powers of such board being purely statutory, that question must depend upon a proper interpretation of the tax law approved March 6, 1891.

Acts 1891, p. 199. It is conceded on both sides that section 114 of that act confers jurisdiction and plenary power on the "county board of review," not only to hear complaints of any owner of personal property, except "railroad track and rolling stock," and to equalize the valuation of property and taxables made subsequent to the first day of April, and to correct any list of valuation, but also to equalize the valuation made by the assessor, either by adding to or deducting therefrom such sums as are necessary to fix the true cash value. But it is contended by the appellant that original jurisdiction to do these same acts is conferred also on the State Board of Tax Commissioners by sections 120 and 129, and other sections of that act. By sections 120 and 125, the power to do these things on appeal is conferred on the State Board of Tax Commissioners. In support of this contention appellant cites *Cleveland, etc., R. W. Co. v. Backus,* 133 Ind. 513. This court in that case said: "As to property other than that denominated by the law as 'railroad track' and 'rolling stock,' including all property, real and personal, of individuals, the law provides for its assessment by assessors, and it creates county boards of review in the several counties of the State, and by section 114, from which we have hereinbefore quoted, it is provided that such county boards 'shall pass upon each valuation, and may, on sufficient cause being shown, or on its own motion, correct the assessment or valuation of any property in such manner as will, in its judgment, make the valuation thereof just and equal.' While this section may not give to county boards the right to change individual assessments of parties not legally before the board, it evidently contemplates and gives the right to parties whose property has been wrongfully or erroneously assessed to voluntarily appear before such county

board and show that the assessment made against any property is erroneous, and have it corrected, and it vests in such county boards the power, on such showing being made, or on their own motion, to make corrections and change the valuation; and from a decision made against a party who is before such county board, it gives an appeal to the State Board of Tax Commissioners, whose decision upon the question shall be final.

"By section 129 of the statute from which we have heretofore quoted, this same right to be heard given to all property owners, and the power vested in the county boards of review, to correct and change assessments, by section 114, is ingrafted into and made a part of the law governing the proceedings before the State Board as to valuations and assessments over which such State Board has jurisdiction and control, for by section 129, *supra,* it is declared that the State Board is hereby given all the powers given to county boards of review. The right of parties to be heard, and the right of the county boards to hear showings as to assessments, and to correct and change assessments and valuations are a part of the powers vested in the county boards, and all their powers are transferred and invested in the State Boards, so that, if there is any power in the county boards to hear grievances and make corrections in relation to property and assessment over which they have jurisdiction, then the State Board has the same power in relation to property and assessment over which it has jurisdiction."

This language clearly recognizes the appellees' contention that the powers of the State Board as to assessments and corrections of tax lists is by appeal, and not original, as appellant contends; indeed no part of the decision lends any support to appellants' contention. Appellant contends that section 120 (subdivision 2) providing that the State Board shall have power "to construe the

tax and revenue laws of the State''; (subdivision 3) ''to see that all assessments of property in this State are made according to law''; and (subdivision 5) ''to see that all taxes due the State are collected,'' confers original jurisdiction on the State Board, if it cares to exercise it, along with other taxing officers, of all property, and differing from the other taxing officers only in that its decision is final.''

Had such a contention been a tenable one, it would have afforded a happy and much easier solution of the grave constitutional questions than the one reached, and saved this court much labor and trouble. If that construction of the provision quoted were correct, then there was no constitutional question involved in that case, because, in that event, all property and all property owners would alike be subject to the original power and jurisdiction of the State Board to make assessments and valuations of all kinds of property of all kinds of owners, and corrections thereof, by adding thereto or deducting therefrom so as to equalize, etc., and the complaint of the appellant in that case would have been without any foundation as to a denial of the equal protection of the law.

There is another reason why such a construction is inadmissible, and that is section 142, authorizing the county auditor to add omitted property, with the valuation thereof, and the amount of tax thereon, to the duplicate, requires him, in case the owner lives in the county, to give him written notice of his intention to add such property requiring such person to appear before him at his office at a specified time within five days after giving such notice to show cause, if any, why such property should not be added, etc. There is no provision we have been able to find, authorizing the State Board to issue or serve a notice on a property owner of their intention to

add property to his list and charge him with its tax or in any other way to increase the amount of his taxes. The general scope and spirit of the act contemplates that notice would be essential before such an act could be validly done, where, as here, the owner lived in the county; indeed, it expressly provides for notice as a condition precedent to the exercise of such a power by the county auditor, the only officer outside of the county board it expressly authorizes to do such an act. The Legislature was careful not to leave even so small an exercise of power by the State Board as the issue of a subpœna for witnesses to inference, but expressly provided for it in section 123. Therefore, it seems a reasonable inference that if the State Board was to be authorized to issue such a notice it would have been so provided. It is not even contended by appellant that it was intended by the Legislature that the State Board should exercise this power, without notice, and the State Board even gave the notice. But the giving of a notice unauthorized by law is not a legal notice. *Kuntz* v. *Sumption, Treas.*, 117 Ind. 1.

Another reason why that power was not intended to be exercised by the State board is its impracticability, and the great hardship and injustice to property owners to be required to attend at the State capital to have a cow properly appraised and valued for taxation that could be as well, if not better, done at their county seat. The construction contended for is at war with the principles of construction laid down in the case referred to. It is there said by this court: Courts will presume that the Legislature intended its acts to be reasonable, constitutional and just; and, when possible, consistently with any fair rendering of the words, will so construe them as not to make them otherwise. "If the Legislature manifests an intention to create a system for the govern-

ment of any subject, it is the duty of the court to effectuate that intention by such a construction as will make the system consistent in all its parts, and uniform in its operation.''

We, therefore, conclude that the State Board had no original jurisdiction to revise individual tax lists other than ''railroad property'' and the equalization of assessments of real estate. Hence, they had no power to order any part of the $56,651 to be added to the appellees' assessment, and they had no power to legally notify appellees of their intention so to do, or notify the auditor of Parke county to make such addition, and said auditor had no power to make such addition without giving appellees notice in writing of his intention so to do, and hence his act in making such addition was without authority of law, and void.

We are asked to go on and determine whether section 59 of the act is not unconstitutional, which requires unincorporated banking associations to return their deposits in other banks subject to draft, not as credits, but as money from which their indebtedness to their depositors can not be deducted, while other tax payers, as is contended, are authorized by the act to return their deposits as credits, and to deduct therefrom their indebtedness. While the courts ought not to shun the consideration of the question of the constitutionality of a statute they ought not to go out of their way to find or decide such questions unnecessarily. They ought not to seek to draw such momentous questions into their adjudication collaterally, nor on trivial occasions. It is both more proper and respectful to a co-ordinate department of the State government, to discuss and pass upon the constitutionality of a statute only where that is the thing involved in the litigation, and where it is necessary to the determination. Thus presented and de-

termined, the decision carries a weight with it which can not belong to an extra judicial determination. *Hoover* v. *Wood*, 9 Ind. 286; 3 Am. and Eng. Ency. Law, 676, and authorities there cited. From our conclusions before reaching the constitutional question, it is apparent that the judgment below awarding all the relief asked must be affirmed. It is therefore wholly unnecessary to the relief asked by either party in this court to pass on the constitutional question. While the board of commissioners was not a necessary party, yet, as they represented the county whose interest alone was involved more than the treasurer did, they were proper parties. The court below committed no error in overruling either of the demurrers.

Filed June 6, 1893; petition for rehearing overruled May 11, 1894.